## COMMONWEALTH *vs.* ZACHARIAH OBER.

The *St.* of 1846, *c.* 244, concerning hawkers and pedlers, is not in violation of any provision of the constitution of the United States.

It is a violation of that statute for a person to sell the goods prohibited therein, from house to house, at the request of purchasers, although he was travelling about in the exercise of some lawful employment, and without any previous intention of selling or exposing to sale such goods.

It is not a violation of that statute for an agent to go about delivering to traders in the country, goods made by his principals in Boston, which had been previously ordered of them by such traders; nor even to deliver at the same time, and under the same circumstances, a larger quantity of the same goods than they had previously ordered.

THE defendant was indicted for a violation of the Hawker and Pedler Act, *St.* 1846, *c.* 244. The first count averred that the defendant "was a hawker and pedler of glass ware and brittania ware, so called, and did then and there go about from place to place and from dwelling-house to dwelling-house in said Marblehead, carrying for sale and exposing to sale, glass ware and britannia ware, so called, the same not being fruits and provisions," &c., enumerating the other excepted articles in the statute, "without having first obtained a license to be such hawker and pedler, against the peace of the commonwealth," &c.

The second count alleged that the defendant, "not being then and there first duly licensed as a hawker, pedler, or petty chapman, according to law, did then and there, in said Marblehead, go about from place to place, and from dwelling-house to dwelling-house, carrying for sale, and exposing to sale, sundry goods, wares, and merchandise, to wit, certain glass ware and brittania ware, so called, the same not being

then and there articles which by the laws of said common-wealth, any hawker, pedler, or petty chapman, or other person, might lawfully go about from place to place, and from dwell-ing-house to dwelling-house, carrying for sale, and exposing to sale, said glass ware and brittania ware not being fruits or provisions," &c., " against the peace of the commonwealth and contrary to the form of the statute," &c.

At the trial in the court of common pleas, October term, 1853, held by *Briggs*, J., no evidence was introduced, except a written admission by the defendant, of which the material part was as follows: " Zachariah Ober is the authorized agent of Messrs. Morey & Ober, manufacturers of brittania ware in Boston, who receive orders from country traders and store-keepers, which they supply. They send their wares to their customers in a two-horse wagon, of which said Ober has charge, and he delivers to such traders and shopkeepers the wares they have ordered, and sometimes delivers them goods of the same description, in addition to what they have ordered. He has delivered goods in such mode in Marblehead, at the time specified in the indictment, and he has never had any license as a hawker and pedler ; but he has never delivered any wares, except to traders, in wholesale quantities, and never except to the regular customers of said Morey & Ober. He has never retailed any goods, nor sold any at any dwell-ing house. He has never exposed any for sale, except as before stated, but has sold when specially requested by the customers of his principals. The articles so sold are not within the exception of *St.* 1846, *c.* 244, § 2."

The counsel for the defendant requested the court to rule: 1st. That the facts stated in the defendant's admission do not sustain the indictment or prove the offence charged therein. 2d. That if any person who in the exercise of a lawful em-ployment, goes about from town to town, and from place to place in the same town, without any previous intention to sell or expose for sale any goods, wares, or merchandise which by the acts in question, he is prohibited from selling or exposing for sale, yet does, nevertheless, sell goods upon the request of the purchasers, such act is not a violation of the law. 3d. That

the act of 1846, *c.* 244, is one which the legislature of the commonwealth had no authority to pass under the constitution of the United States.

But the court declined to give such instructions, and instructed the jury that the sale of such goods as were delivered by the defendant in compliance with previous orders, did not come within any prohibition of law, but that the sale of goods, as described in the admission of the defendant otherwise than above, was illegal; and the defendant was found guilty. To which rulings the defendant excepted.

*S. H. Phillips,* for the defendant.

*R. Choate,* (attorney-general,) for the commonwealth.

SHAW, C. J. The defendant was tried on an indictment, found against him for a violation of the law against hawkers and pedlers, *St.* 1846, *c.* 244. The leading primary idea of a hawker and pedler is, that of an itinerant or travelling trader, who carries goods about, in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale and sells them in a fixed place of business. Superadded to this, (though perhaps not essential,) by a hawker, is generally understood, one who not only carries goods for sale, but seeks for purchasers, either by outcry, which some lexicographers conceive as intimated by the derivation of the word, or by attracting notice and attention to them as goods for sale, by an actual exhibition or exposure of them, by placards or labels, or by a conventional signal, like the sound of a horn for the sale of fish. But our statute goes further, and not only proscribes actual hawkers and pedlers, whose employment is that of travelling traders, and thus seem to refer to a business or habitual occupation; but it extends to all persons, doing the acts prescribed. The provision is as follows: " Every hawker, pedler, or petty chapman, or other person, going from town to town, or from place to place, or from dwelling-house to dwelling-house, in the same town, either on foot, or with one or more horses, or otherwise carrying for sale, or exposing to sale, any goods," &c. *St.* 1846, *c.* 244, § 1.

This is the statute upon which the defendant was indicted,

and the question is, upon the record, whether the conviction was right. The indictment contains two counts, adapted apparently to these two views of the statute. The first charges that said Ober, at, &c., on, &c., " was a hawker and pedler of glass and britannia ware, and did then and there go about from place to place, and from dwelling-house to dwelling-house, in Marblehead, carrying for sale and exposing to sale," &c., negativing the permitted articles, " not having obtained a license as a hawker and pedler." The second count charges that said Ober, on, &c., at, &c., not being duly licensed as a hawker, pedler, or petty chapman, did at, &c., go about, carrying, &c., as in the first count.

The difference is, that the first contains an express averment that the defendant was a hawker and pedler ; the second alleges the doing of those acts which, repeated, would warrant the description of him as a hawker and pedler.

The only evidence in the case, was the written admission of the defendant, made for the purpose of being used in this case, and which is stated in the bill of exceptions. The whole must be taken together ; it would be alike contrary to the well-known rule of law, and to the plain dictates of fair dealing, to take that which makes against the party, and not allow him the benefit of what is in his favor, contained in one and the same declaration, so far as it is not contradicted, controlled, or modified by other evidence.

Three prayers for instruction in point of law, upon the facts stated, were made to the court, by the defendant's counsel. Without taking them in their order, the second was, to instruct the jury, that if any person, who, in the exercise of a lawful employment, goes about, &c., without any previous intention to sell, or expose for sale, any goods, &c., prohibited, &c., yet nevertheless does sell, upon the request of purchasers, such act is not a violation of the law.

We think the court rightly declined to give this instruction. If by " previous intention," is meant, as we suppose, an intention formed before he sets out upon his journey, we think it would not be correct. If he sets out with a load of goods, to carry to a distant town, to be sold there by a factor, but on

his way, for some cause, perhaps finding a demand for such goods, he sells them from house to house, or in the open air, to all who may desire to purchase, in such parcels as they wish, it seems to us, that such sales would be within the act. It is the acts done, upon an unlawful intent formed at any time before they are done, that the law intends to prohibit and punish.

The third instruction prayed for was, that the law is repugnant to the constitution of the United States. The grounds are not stated in the bill of exceptions; but in the statement of points, there are two: 1. Because it is at variance with the exclusive right of congress to regulate commerce. The power of congress is, (Const. U. S. Art. 1, § 8) to regulate commerce with foreign nations, and among the several states, and with the Indian tribes. The law in question interferes with none of these. 2. Because it is practically an act laying a duty on exports or imports without consent of congress.

If, indeed, a state law were to require a large sum to be paid for a license to sell any and all imported goods, and any sale without such license, should be prohibited under a penalty, it might be deemed a colorable, indirect, and covert mode of levying a tax upon imported goods, and in violation of the constitution of the United States. This law is obnoxious to no such charge; it has no such characteristics.

As to the other objection, we consider this as wholly an internal commerce, which the states have a right to regulate, and, in this respect, this law stands on the same footing, with the laws regulating sales of wine and spirits, sales at auction, and very many others, which are in force and constantly acted upon.

But the instruction asked for, in the first prayer, stands on different grounds, and requires consideration. It was to this effect; that the facts stated in the defendant's admission, do not sustain the indictment, or prove the offence charged therein. The court declined to give such instructions, and charged the jury that the sale of such goods as were delivered by the defendant, in compliance with previous orders, did not come within the prohibition of the law; but that the sale of goods,

42 *

as described in the admission of the defendant, otherwise than above, was illegal. From the correctness of the latter clause of this charge, this court feel compelled to dissent. By the admission referred to, it appears that the defendant was the agent of a firm in Boston, manufacturers of britannia ware, that they were accustomed to receive orders from country traders and storekeepers, which they supplied, that they send their wares to their customers in a two-horse wagon, of which the defendant had charge, that he delivered them the goods ordered, and that he sometimes delivered to traders and store-keepers, goods of the same description, in addition to those they had ordered, that he had delivered goods in such mode in Marblehead, at the time specified, and never had any license as a hawker and pedler ; but that he had never delivered any wares, except to traders, and the regular customers of his employers, that he had never retailed any goods or sold at any dwelling-house or exposed any for sale, except as above stated, but had sold, when specially requested by the customers of his principals. He admitted that the articles sold were not within the exception, in the second section of the act.

Upon these facts, the court are of opinion that the jury should have been instructed that the defendant was not liable. It seems to us that the defendant was a carrier, delivering goods to persons who had previously ordered them, but who, when the goods were brought, desired to enlarge their order, or take more than had been previously ordered, upon the same terms, in all respects, as to prices and credits. It was, in effect, a purchase of the same buyer from the same seller, of the same commodity, to a larger amount than previously ordered. It wants the essential characteristics of carrying about for sale, offering them to purchasers, fixing the prices and terms of sale, or receiving payment, and therefore these acts were not within the prohibition of the statute.

It may be proper to remark, that, in general, the court are not to be called upon to express an opinion on the weight or sufficiency of the evidence to sustain an indictment or declaration ; that is the province of the jury. But here the facts

were fixed; those which made against the accused were to be taken to be true, because he admitted them for that purpose, and no other evidence was offered. The judge was, therefore, rightly called upon to give an opinion, — not upon evidence to establish facts, — but upon facts themselves; and whether they were sufficient to sustain the indictment, was purely a question of law.          *Verdict set aside.*